Delores PETTY and Bill
Petty, Appellants,

v.

Dr. Rudolf CHURNER, M.D., Appellee.

Heritage Eye Center, Appellant,

v.

Delores Petty and Bill Petty, Appellees.

No. 05–09–00096–CV.

Court of Appeals of Texas,
Dallas.

March 23, 2010.

Rehearing Overruled May 25, 2010.

---

Brent R. Walker, Aldous Law Firm, Dallas, TX, for Appellants.

Bill Liebbe, Tyler, TX, for Appellee.

Before Justices MORRIS, O'NEILL, and FILLMORE.

## OPINION

Opinion By Justice MORRIS.

This is an appeal in a health care liability case. Delores and Bill Petty were the plaintiffs in the trial court below, and Dr. Rudolf Churner, M.D. and Heritage Eye Center were the defendants. After Dr. Churner and Heritage each filed motions to dismiss the Pettys' claims, the trial court granted Dr. Churner's motion but denied Heritage's. Now the Pettys and Heritage both contend the trial court erred. Our review focuses on whether the expert reports filed by the Pettys were sufficient to satisfy the requirements of section 74.351 of the Texas Civil Practice and Remedies Code. After examining the record under the applicable standard of review, we conclude the trial court properly dismissed the claims asserted against Dr. Churner. We also conclude the trial court erred in denying Heritage's motion to dismiss. Accordingly, we affirm the trial court's order in part and reverse and remand it in part.

I.

Delores and Bill Petty filed suit against Dr. Churner and Heritage seeking damages for injuries allegedly sustained during an operation. They alleged that on March 7, 2006, Delores Petty underwent cataract surgery performed by Dr. Churner. At the end of the surgery, Dr. Churner injected Petty's eye with a Kenalog solution prepared by an employee of Heritage. According to the Pettys, the employee "failed to use strict sterile technique" in preparing the solution resulting in the solution being contaminated with streptococcus mitis. The Pettys claimed the injection caused Delores to develop endophthalmitis resulting in loss of vision in her left eye.

The Pettys asserted claims for negligence against both Dr. Churner and Heritage. They alleged Dr. Churner was negligent in "failing to adopt, implement, and enforce policies and procedures for compounding Kenalog solution under strict sterile techniques." They further alleged Dr. Churner was negligent in "failing to supervise the employee or technician of Heritage Eye Center who was acting as his agent in compounding the Kenalog solution to assure that [it] was not contaminated with bacteria." In addition to the direct liability claims against Dr. Churner, the Pettys also asserted vicarious liability claims against both him and Heritage stating that "the technician who compounded the Kenalog solution . . . was an employee of Heritage" and that "the employee/tech-

nician who was compounding the Kenalog solution ... was the agent or employee of Dr. Churner." They claimed the unnamed technician was negligent in "failing to strictly adhere to established policies and procedures to assure that the compounding of the Kenalog solution was done under septic [sic] technique" and in "contaminating the Kenalog solution that was to be used and injected into the left eye of Plaintiff Delores Petty."

Pursuant to section 74.351 of the Texas Civil Practice and Remedies Code, on September 4, 2008, the Pettys served Dr. Churner and Heritage with expert reports to support their claims. The proffered reports included a report prepared by Dr. David A. Pegues, M.D., an epidemiologist, a second report prepared by Dr. Lloyd V. Allen, Ph.D., a registered pharmacist, and Dr. Churner's medical records relating to Delores Petty's surgery. Dr. Churner and Heritage objected to the reports and moved to dismiss the Pettys' claims on the ground that the reports did not fulfill the requirements of 74.351 and did not constitute a good faith effort to do so. The Pettys responded that, when read together, the reports met the statute's requirements. In the alternative, they requested a thirty-day grace period to cure any deficiencies.

Following a hearing, the trial court granted Dr. Churner's motion to dismiss holding that the expert reports were "totally insufficient" as to him. The trial court, however, denied Heritage's motion concluding the reports were otherwise sufficient. In this appeal, the Pettys challenge the trial court's ruling in favor of Dr. Churner, and Heritage challenges the ruling unfavorable to it.

## II.

We first address Heritage's argument that the trial court abused its discretion in denying its motion to dismiss. We review a trial court's order on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 875 (Tex.2001). A trial court has no discretion in determining what the law is or in applying the law to the facts. *See Cayton v. Moore*, 224 S.W.3d 440, 445 (Tex.App.-Dallas 2007, no pet.). An abuse of discretion occurs if the trial court clearly failed to analyze and determine the law correctly or applied the law incorrectly to the facts. *Id.*

Heritage contends the trial court abused its discretion in denying its motion to dismiss because the Pettys' expert reports were deficient in numerous ways. The trial court may grant a motion challenging the sufficiency of an expert report only if it appears to the court, after a hearing, that the report does not represent a good faith effort to comply with the statutory definition of an expert report. *See Whitworth v. Blumenthal*, 59 S.W.3d 393, 396 (Tex.App.-Dallas 2001, pet. dism'd by agr.). To constitute a good faith effort, the report must provide, for each defendant, a fair summary of the expert's opinions on each of the elements set forth in the statutory definition of an expert report: standard of care, breach of that standard, and causation. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6) (Vernon Supp. 2009); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002). The report cannot merely state the expert's conclusions about these elements but must explain the basis of the statements, linking the conclusions to the facts. *See Bowie*, 79 S.W.3d at 52. In determining a report's sufficiency, the court may not look beyond the report itself because all information relevant to the inquiry should be contained within the document's four corners. *Id.*

■ Among the numerous deficiencies asserted by Heritage is that the Pettys' reports fail to demonstrate the causal relationship between Heritage's alleged failure to meet the applicable standard of care and Delores Petty's injury. The Pettys respond that the reports read together adequately show a causal connection. The Pettys are correct that the reports may be considered together in determining whether they provided a report meeting the statutory requirements. *See Walgreen Co. v. Hieger*, 243 S.W.3d 183, 186 n. 2 (Tex. App.-Houston [14th Dist.] 2008, pet. denied). However, an expert whose report may be considered for one statutory element may not be qualified to offer an opinion on the other statutory elements necessary for a sufficient expert report. *See id.*

■ Pursuant to section 74.403 of the Texas Civil Practice and Remedies Code, only a physician may testify as an expert on the issue of causation. TEX. CIV. PRAC. & REM.CODE ANN. § 74.403 (Vernon 2005). In this case, one of the reports submitted by the Pettys was prepared by Dr. Lloyd Allen, a pharmacist. Because Dr. Allen is not a physician, his report cannot be considered in determining whether the reports submitted by the Pettys adequately show a causal connection between the alleged negligence and injury. *See Hieger*, 243 S.W.3d at 186 n. 2.

■ The remaining documents relied upon by the Pettys include a report prepared by Dr. David Pegues and Dr. Churner's medical records relating to Delores Petty's surgery. The report by Dr. Pegues generally summarizes the outbreak of endophthalmitis at Heritage Eye Center

on March 7, 2006. The report states that, of the sixteen patients operated on by Dr. Churner that day, eleven "developed early post-operative endophthalmitis requiring vitrectomy and instillation of intravitreal antibiotics." The report also notes that "[a] number of the patients suffered significant visual loss." Dr. Pegues concludes,

> Although no information was available on the compounding practices or facility, the finding of multiple genetically unique Streptococcal species commonly found in human normal oral flora strongly suggest that the multidose 60–mL syringe of Kenalog solution was contaminated with oral secretions during compounded [sic] by the pharmacist at Heritage Eye Center. Dispensing the compounded medication into unit-dose syringes that then were administered to 16 patients resulted in endophthalmitis with a high attack rate of 68% and substantial morbidity.

Nowhere in the report does Dr. Pegues discuss a causal connection between the oral secretions in the contaminated Kenalog solution and the specific injuries Delores Petty claims to have suffered. Indeed, Dr. Pegues does not discuss Delores Petty at all. The only portion of the report discussing the condition of Dr. Churner's patients shows that, of the patients that contracted endophthalmitis, the specific bacteria found in their infections varied or, in two cases, could not be determined.[1] We are not permitted to fill in the gaps in a report by drawing inferences or guessing what the expert likely intended. *See Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex.App.-Austin 2007, no pet.).

---

1. The report states "[o]f the 11 patients with clinical endophthalmitis, 9 had either a positive culture for Streptococcus species [*Streptococcus mitis* (6) or viridans streptococci (2)] or a vitreal fluid gram stain demonstrating gram-positive cocci; two patients had negative vitreal fluid cultures but may have been receiving antimicrobial therapy at the time of culture."

The Pettys point to Dr. Churner's medical records as providing the necessary link in the causal chain between the contaminated Kenalog solution and Delores Petty's injuries. In response, Heritage vigorously argues that the Pettys cannot rely on Dr. Churner's medical files to satisfy their statutory burden because bulk medical records cannot constitute an expert report. *See Maxwell v. Seifert*, 237 S.W.3d 423, 427 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). The Pettys contend they are not relying on the records in bulk, but on only three adverse event "reports" found in Dr. Churner's file.

First, we note that the adverse event reports relied upon by the Pettys do not appear to have been created by Dr. Churner. As stated above, an expert opinion on causation must be rendered by a physician. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.403 (Vernon 2005). The Pettys acknowledge that the reports are not in Dr. Churner's handwriting, but they contend he necessarily adopted them because they are contained in his medical files. The Pettys cite no authority for this proposition and we have found none.

Even if an adverse event report contained in medical records could qualify alone as part of the Pettys' statutorily required expert report, a question we do not answer here, the documents relied upon do not contain any opinions or conclusions about the cause of Delores Petty's endophthalmitis and do not mention her alleged loss of vision. The first report states only that Delores Petty suffered an intraocular infection. The next report states that Delores Petty was one of the eleven patients affected by endophthalmitis and the "BSS used to mix/diluted Kenalog" was "thought to be involved." Finally, the third report states that the cultures taken from both the patient and the syringe used to dilute the Kenalog "resulted

in a growth of strept mitis." The report also states that "a sterile syringe from the same lot also grew strept mitis." Neither Dr. Pegues's report nor the reports in Dr. Churner's file mentions any action by a Heritage employee or how such action could have caused Delores Petty's alleged injuries. Although one of the adverse event reports suggests that the Kenalog solution mixed by the Heritage employees was "thought to be involved" in her endophthalmitis, this statement is far from a reasoned opinion or conclusion on causation. A description of possible causation does not constitute a good faith effort to comply with the statute. *See Hieger*, 243 S.W.3d at 186.

In addition, the last adverse event report relied upon by the Pettys states that a culture taken from a sterile syringe in the same lot used by Dr. Churner on March 7 also grew strept mitis. This suggests that the microbial contamination that may have caused Delores Petty's injury was a result of insufficient sterilization by the syringe manufacturer. Accordingly, to the extent the report can be viewed as addressing causation at all, it suggests that Delores Petty's infection was caused by the condition of the syringe and not the actions of Heritage's employees. While Dr. Pegues's report discusses why it is likely the Kenalog solution was contaminated by oral secretions, there is nothing in Dr. Pegues's report opining that Delores Petty's specific infection was caused by the oral secretions rather than the already contaminated syringe.

Simply stated, there is no report or combination of reports submitted by the Pettys that provides a fair summary of an expert's opinion on the causal relationship between Heritage's alleged negligence and Delores Petty's injury. We conclude, therefore, that the trial court abused its

discretion in refusing to grant Heritage's motion.

Having concluded that the trial court erred, we must now address the relief to which Heritage is entitled. Heritage asks the Court to reverse the trial court's order and render judgment dismissing the Pettys' claims. The Pettys respond by requesting a thirty-day extension under section 74.351(c) of the Texas Civil Practice and Remedies Code to cure any deficiencies in the reports.[2] Whether we can remand the cause to the trial court to determine if the Pettys are entitled to a thirty-day extension depends upon whether their timely filed reports are considered merely deficient or "no report at all."

A trial court may grant an extension under section 75.341(c) only to a party that has failed to serve an expert report because the report they timely filed is found to be deficient. See TEX. CIV. PRAC. & REM.CODE ANN. § 75.341(c) (Vernon Supp. 2009). If a party fails to serve an expert report in any form within the time permitted, the trial court has no discretion to grant an extension and must dismiss the claims. See id. § 75.341(b). The issue that has been discussed, but not directly resolved, by the Texas Supreme Court is whether a timely served report may be so deficient that it constitutes no report at all thereby precluding the trial court from granting an extension.

In Ogletree v. Matthews, the supreme court appeared to divide the "universe of possible reports" into two categories: deficient and absent. See Ogletree v. Matthews, 262 S.W.3d 316, 320 (Tex.2007) (J. Willett concurring). In his concurring opinion, Justice Willett stated that a third category of report should be recognized: a report so lacking in the necessary elements that it does not rise to the level of being a report at all. See id. at 323. Justice Willett opined that granting a "grossly substandard filing pitched as a bona fide report" the same status as a report that is merely deficient in some respect would "inadvertently expand the availability of the thirty-day extension provided by section 74.351(c) beyond what the Legislature intended." Id. at 322–23. To date, no such "third category" has been recognized by the supreme court and this Court has declined to do so. See Cook v. Spears, 275 S.W.3d 577, 581 (Tex.App.-Dallas 2008, no pet.). Even if such a third category existed, it is clear that it would be extremely limited. Such a report would in all likelihood need to "bear no resemblance to Chapter 74's definition of an expert report," "not purport to have any relationship to a health care liability or malpractice case," or contain "none of the statutorily prescribed contents." See In re Watkins, M.D., 279 S.W.3d 633, 635 & 639 (Tex.2009) (Jefferson, J., concurring); Lewis v. Funderburk, 253 S.W.3d 204, 211 (Tex.2008) (Willett, J., concurring).

In Lewis v. Funderburk, the supreme court found the expert report deficient because the expert who created the report was not qualified to do so. Notably, the court remanded the cause to the trial court stating that the deficiency could be "cured" with a different report by a new expert. See Lewis, 253 S.W.3d at 208. Given this precedent, we conclude the Pettys' report, though insufficient to meet the requirements of section 74.351(r)(6) in some ways, is not so deficient as to constitute no report at all. Accordingly, we reverse the trial court's order with respect

---

2. The Pettys appear to request that this Court grant them a thirty-day extension. The appropriate remedy, however, is to remand the cause to the trial court to consider granting an extension. See Benson v. Vernon, 303 S.W.3d 755, 759–61 (Tex.App.-Waco 2009, no pet. h.).

to Heritage and remand the claims to that court for further proceedings. *See Leland v. Brandal,* 257 S.W.3d 204, 207–08 (Tex. 2008).

We next consider the Pettys' appeal of the trial court's order granting Dr. Churner's motion to dismiss. The issues presented are largely the same as those presented in Heritage's appeal. The one distinction is that, in addition to the vicarious liability claims, the Pettys also asserted direct liability claims against Dr. Churner. Those direct liability claims, as set forth in the Pettys' petition, assert that Dr. Churner was negligent in "failing to adopt, implement, and enforce policies and procedures for compounding Kenalog solution under strict sterile techniques" and in "failing to supervise the employee or technician of Heritage Eye Center who was acting as his agent in compounding the Kenalog solution to assure that [it] was not contaminated with bacteria." The Pettys' expert report did not address these direct liability claims. We conclude, therefore, that the trial court properly dismissed those claims.

The Pettys appear to acknowledge that they did not serve Dr. Churner with an expert report addressing the direct liability claims. They argue, however, that Dr. Churner is directly liable for the actions of the employees who compounded the Kenalog solution under section 157.001 of the Texas Occupations Code. Section 157.001 allows a physician to delegate a medical act to a qualified and properly trained person acting under the physician's supervision. *See* TEX. OCC.CODE ANN. § 157.001(a) (Vernon 2004). The delegating physician remains responsible for the medical acts of the person performing them. *Id.* § 157.001(b). The Pettys argue that "by using this statute, [they] only need show in their expert reports that the

persons who did the medical act were negligent."

The Pettys' argument is essentially that section 157.001 allows them to convert their vicarious liability claims into direct liability claims while still applying a vicarious liability standard to their expert reports. When a party's health care claim asserts purely vicarious liability, a report that adequately implicates the actions of the defendant's agents or employees is sufficient. *See Gardner v. U.S. Imaging, Inc.,* 274 S.W.3d 669, 671–72 (Tex.2008). For a physician's liability to arise under section 157.001, however, the medical act delegated to the agent or employee must be one that "a reasonable and prudent physician would find within the scope of sound medical judgment to delegate." This requirement necessarily implicates a standard of care to be applied to the physician, not just the agent or employee, and requires an expert medical opinion addressing the doctor's actions. The Pettys' reports contain no such opinion.

As for the Pettys' vicarious liability claims against Dr. Churner, they are identical to those asserted against Heritage. For all of the reasons we concluded above that the Pettys' expert reports were insufficient with respect to Heritage, they are equally insufficient as to Dr. Churner. The Pettys request the case be remanded to the trial court to allow it to consider their motion for an extension under 74.351(c). The Pettys moved for such an extension below when the trial court held that their reports were insufficient as to Dr. Churner. The trial court necessarily denied their motion for extension when it dismissed the claims against Dr. Churner. Accordingly, the Pettys stand in a different procedural posture with respect to Dr. Churner than they do with Heritage. The Pettys present no argument addressing how the trial court erred in refusing to

grant them an extension. They have, therefore, waived any such argument. *See* TEX.R.APP. P. 38.1(h).

Based on the foregoing, we reverse the trial court's order to the extent it denies Heritage Eye Care Center's motion to dismiss and remand those claims for further proceedings. We affirm the trial court's order in all other respects.