COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| TENET HOSPITALS LIMITED, A TEXAS LIMITED PARTNERSHIP D/B/A PROVIDENCE MEMORIAL HOSPITAL, | § | |
| | § | No. 08-09-00093-CV |
| Appellant, | § | Appeal from |
| v. | § | County Court at Law No. 5 |
| RICHARD BARNES, JAMES BARNES, KATHLEEN HALE, KIMBERLEY VANDAGRIFF, AND | § | of El Paso County, Texas |
| KAREN CASTILLO, INDIVIDUALLY AND AS PERSONAL | § | (TC # 2007-4558) |
| REPRESENTATIVE OF THE ESTATE OF EARLINE W. BARNES, DECEASED, | § | |
| | § | |
| Appellees. | | |

**O P I N I O N**

This appeal stems from a health care liability claim against Tenet Hospitals Limited, a Texas Limited Partnership d/b/a Providence Memorial Hospital (Providence). Providence moved to dismiss the lawsuit based on the plaintiffs' failure to timely serve an expert report authored by a qualified expert in compliance with Chapter 74 of the Texas Civil Practice and Remedies Code. The trial court denied the motion. For the reasons that follow, we affirm.

**FACTUAL BACKGROUND**

The health care liability claim was brought by Richard Barnes, James Barnes, Kathleen Hale, Kimberley Vandagriff, and Karen Castillo, individually and as personal representative of the Estate of Earline W. Barnes (Appellees) for injuries allegedly sustained by Barnes and her subsequent death. Appellees claim that Barnes, a 79-year-old woman with congestive heart failure who had been admitted to Providence, suffered from complications of shock and died on October 31, 2005

because of the hospital's negligence.

Appellees filed suit on October 12, 2007 and their time in which to file expert reports expired on February 9, 2008. In an effort to comply with Chapter 74, Appellees submitted three reports and *curriculum vitae* from: (1) Michael P. Koumjian, M.D., (2) Juan U. Contin, M.D., and (3) Angelica Tyler, R.N. Providence objected to the reports, alleging that the authors are not qualified to render expert opinions against Providence and that their reports are inadequate. Providence also argued that Dr. Contin's report is not an expert report at all. No additional or supplemental expert reports were served.

## STANDARD OF REVIEW

We review a trial court's decision on a motion to dismiss under Section 74.351 for an abuse of discretion. *See American Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). An abuse of discretion occurs when the trial court acts in an unreasonable or arbitrary manner without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). A trial court will be deemed to have acted arbitrarily and unreasonably if the trial court could have reached only one decision, yet reached a different one. *See Teixeira v. Hall*, 107 S.W.3d 805, 807 (Tex.App.--Texarkana 2003, no pet.). To that end, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *In re Southwestern Bell Telephone Co., L.P.*, 226 S.W.3d 400, 403 (Tex. 2007), *citing In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003). An abuse of discretion does not occur merely because the appellate court may have decided a discretionary matter in a different way than the trial court. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). However, to the extent resolution of the issues presented requires interpretation of the statute, we review the ruling *de novo*. *See Buck v. Blum*, 130 S.W.3d 285, 290 (Tex.App.--Houston [14th Dist.] 2004, no pet.).

**EXPERT REPORTS**

In Points of Error One and Two, Providence complains that the reports of Dr. Contin and Dr. Koumjian fail to meet the statutory requirements of Section 74.351.

*Can the Expert Reports be Considered Together?*

Providence attacks the sufficiency of both Dr. Contin's autopsy report and Dr. Koumjian's expert report. It raises numerous arguments addressing why an autopsy report does not qualify as an expert report. It also challenges Dr. Koumjian's report as wholly inadequate because it does not represent an objective good faith effort to comply with the definition of an expert report set forth in Section 74.351(r)(6). Appellees respond that the three reports must be considered together and that collectively they fulfill the procedural requirements of Section 74.351.

In assessing the adequacy of an expert report necessary to sustain a medical malpractice suit, the trial court must look only within the four corners of the report. *Hutchinson v. Montemayor*, 144 S.W.3d 614, 617 (Tex.App.--San Antonio 2004, no pet.). Although an expert report need not include a full statement of the standard of care and how the standard of care was breached, it must explain what care was expected but not given. *Gallardo v. Ugarte*, 145 S.W.3d 272, 278 (Tex.App.--El Paso 2004, pet. denied). An expert report must represent a good-faith effort to provide a fair summary of the expert's opinions. *Ehrlich v. Miles*, 144 S.W.3d 620, 626 (Tex.App.--Fort Worth 2004, pet. denied). To constitute a good-faith effort, the report must discuss the standard of care, breach thereof, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Chandler v. Singh*, 129 S.W.3d 184, 188 (Tex.App.--Texarkana 2004, no pet. h.).

With regard to serving separate expert reports, Section 74.351(i) provides:

Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.

TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(i)(Vernon 2005).

In *Regent Care Center of Laredo, Ltd. Partnership v. Abrego*, the plaintiff filed three expert reports. No. 04-07-00320-CV, 2007 WL 3087211, at *1 (Tex.App.--San Antonio 2007, no pet.). The issue on appeal was whether the expert reports (read separately or together) established the casual relationship between a breach of the standard of care and the death of the plaintiff for purposes of a wrongful death claim. *Id*. at *5. The defendant hospital argued that the reports were deficient as to causation on the part of the administrator of the nursing home facility because the expert only addressed the hospital's negligence and how its acts and omissions caused the plaintiff's death. *Id*. at *6. The court looked to *Martin v. Abilene Regional Medical Center*, No. 11-04-00303-CV, 2006 WL 241509, *4 (Tex.App.--Eastland 2006, no pet.) for guidance.

In *Martin*, the hospital argued that the nursing expert's report was deficient as to causation because the expert only addressed the nursing standard of care and the breach of that standard while the physician expert addressed only the negligence of the defendant physician and how that negligence was a proximate cause of the plaintiff's injuries. The court of appeals rejected the hospital's argument and read the reports of the nursing expert and the physician expert together since causation--how the failure to prescribe medicine caused the injuries--applied to the conduct of both the nurse and the physician who were allegedly at fault for the failure to prescribe. *Id*. at *4-5. "To the extent that the trial court may have reviewed [the physician expert's] report in isolation, the trial

court abused its discretion because Section 74.351(i) expressly provides that a claimant may satisfy any requirement of the Act by providing expert reports of separate experts." *Id*. at *4. Relying on *Martin*, the *Abrego* court concluded that the two expert reports, read together, addressed the standards of care for the nursing home and the hospital, fulfilling the statute's causation requirement. 2007 WL 3087211, at *6.

Based on the language in Section 74. 351(i) and the analysis in both *Abrego* and *Martin*, we conclude that the three expert reports must be read together. We next consider whether the reports combined provide a sufficient discussion of the standard of care, breach of the applicable standard, and causation. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(r)(6).

*Standard of Care and Breach*

An expert report need not marshal the plaintiff's proof, but it must include the expert's opinions on all three statutory elements. *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex.App.--Houston [1st Dist.] 2006, no pet.). Although it is not sufficient for an expert simply to state that he knows the standard of care and assert it was not met, a fair summary is something less than a full statement of the applicable standard of care and how it was breached. *Palacios,* 46 S.W.3d at 880. A fair summary need only set out what care was expected but not given. *Id*.

Dr. Koumjian's report references the applicable standard of care and subsequent breach of that standard:

> Instead of going ahead with the transfer, Mrs. Barnes' physician should have been immediately notified by the nurse and efforts made to stabilize Mrs. Barnes with vasopressors (medications to raise the blood pressure), intra-venous fluids, and oxygen. Since she had chest pain an EKG should have been immediately obtained. If notified of Mrs. Barnes' condition her physician would have been able to meet the standard of care, which was, attempt to stabilize her as above; make an immediate effort to determine the cause of her hypotension (low blood pressure) and make an immediate effort to locate the source of her bleeding. . . . Instead the nurses of Providence Memorial Hospital and the ambulance personal [sic] decided to transfer

Mrs. Barnes to Sierra Medical Center.

Dr. Koumjian's expert report is corroborated by the report submitted by Nurse Tyler, who opines that the nursing standard of care when a patient undergoes an angiogram is to monitor the patient looking for evidence of bleeding. If there is a sign of blood loss, the standard of care would require the nurse to notify a physician who would be responsive. While waiting for the responding physician, the nurse may give supplemental oxygen if the patient is in extremis or put the patient in a Trendelenburg position to increase blood flow. The standard of care also requires that vital signs be taken and recorded at the time the patient leaves the nursing unit. Here, however, the medical records indicate that the last vital signs were taken two hours before Barnes was transferred. Tyler's report faults Barnes' nurse for:

•failing to call the physician once there was a significant change in the patient's condition and she destablilized;

•failing to provide supplemental oxygen while she was waiting for the physician;

•allowing a patient who had not been stabilized to be moved to Sierra Medical Center; and

•failing to notify the nursing staff at Sierra of Barnes' deteriorating condition.

We conclude that the trial court acted within its discretion in finding that the expert reports adequately complied with the statutory requirements for articulating the standard of care and the breach thereof.

*Causation*

An expert report must provide a fair summary of the expert's opinions on the causal relationship of a breach from a standard of care to the harm claimed, with enough specificity to allow the trial court to conclude that the plaintiff's claims have merit. *Palacios*, 46 S.W.3d at 878; *see* TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(r)(6). Applying this standard, an expert report is

insufficient when it contains only a series of repetitious, conclusory statements regarding causation. *See Jones v. King*, 255 S.W.3d 156, 160 (Tex.App.--San Antonio 2008, pet. denied)(mem. op.)(adding that an expert must "explain the basis of his statements to link the conclusions to the facts"). As is true in other types of negligence cases, causation is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and without which the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex.App.--San Antonio 2004, no pet.). Mere reference to general concepts regarding assessment, monitoring, and interventions are insufficient as a matter of law. *Regent Health Care Center of El Paso, L.P. v. Wallace*, 271 S.W.3d 434, 441 (Tex.App.--El Paso 2008, no pet.h.). There can be no analytical gap between a breach of the standard of care and the ultimate harm. *Clark v. HCA, Inc.*, 210 S.W.3d 1, 11 (Tex.App.--El Paso 2005, no pet.).

We have reviewed the four corners of Dr. Koumjian's report and disagree with Providence that it is conclusory. The report supplies the requisite causal relationship between the breach--the failure to notify Barnes' physician--and Barnes' death. As to causation, the report contains the following information:

> 4. Instead the nurses of Providence Memorial Hospital and the ambulance personal [sic] decided to transfer Mrs. Barnes to Sierra Medical Center. In my opinion, Mrs. Barnes probably could have been stabilized at Providence if the nurse had contacted her physician at 3:20 p.m. This opinion is based upon the fact that Mrs. Barnes had not been hypotensive much more than an hour and her blood pressure would probably respond to intravenous fluids and medications. It is also my opinion that within reasonable medical probability the tear in Mrs. Barnes' artery could have been located and repaired and she would have survived the event with no significant sequelae.

> .   .   .

> 13. She expired on October 31, 2005 from complications of her hypotension in spite of intensive care and the input and expertise of many specialists. In all reasonable medical probability Mrs. Barnes fate was doomed shortly upon arrival at Sierra

Medical Center as she had been documented as having the signs and symptoms of significant blood loss since 2:00 p.m. and had shown the signs and symptoms of having had hypotension that had existed for more than 30 minutes as of 3:20 p.m.

.    .    .

19.  I reviewed the entire medical records concerning Mrs. Barnes hospitalization at Sierra Medical Center searching for other explanations of her death. In my opinion, based on reasonable medical probability, Mrs. Barnes died from the complications of shock.

.    .    .

22.  Thus, in my opinion the transfer process resulted in a delay in the diagnosis and treatment of Mrs. Barnes' hypotension caused by bleeding from a torn femoral artery and probably increased her blood loss. The delay in diagnosis and treatment caused by the transfer exceeded two hours and in all probability caused irreversible damage which led to multi-organ failure and then to death.

The two-fold purpose of an expert report is to inform the defendant of the specific conduct the plaintiff has called into question, and to provide the trial court with a basis to determine whether the plaintiff's claims have merit. *Patel v. Williams ex rel. Estate of Mitchell*, 237 S.W.3d 901, 906 (Tex.App.--Houston [14th Dist.] 2007, no pet.h.).  Pursuant to this standard, we conclude that Dr. Koumjian's report sufficiently addresses the element of causation, linking the alleged breaches of the standard of care to Barnes' subsequent death.  Bearing in mind that expert reports are a preliminary method to demonstrate that a plaintiff has a viable cause of action that is not frivolous or without expert support, we hold the trial court acted within its discretion in concluding that the expert report complied with the statute's causation requirement.

Finding that the requirements of Section 74.351 are met by the reports of Dr. Koumjian and Nurse Tyler, we need not address whether Dr. Contin's autopsy report qualifies as an expert report under Section 74.351.  Accordingly, we overrule Points of Error One and Two.

**EXPERT QUALIFICATIONS**

In Points of Error Three through Six, Providence challenges the qualifications of the three experts.

*License to Practice Medicine*

Before addressing whether Dr. Koumjian must be licensed in Texas in order to opine on causation, we address the hospital's argument that neither Dr. Koumjian's report nor his *curriculum vitae* indicate that he is licensed to practice medicine in any state. In support of this argument, Providence directs us to *Li v. Billingsley*, No. 05-08-00436-CV, 2009 WL 242523, at *1 (Tex.App. --Dallas 2009, no pet. h.). There, the expert was a chiropractor who was licensed to practice chiropractic, not to practice medicine. The court found that nothing in his report or *curriculum vitae* suggested that he was licensed to practice medicine. *Id*. at 2. Here, the report and *curriculum vitae* indicate that Dr. Koumjian is licensed to practice medicine in California. In his report, Dr. Koumjian states that he is a board certified cardiovascular surgeon presently practicing in San Diego, California. In his *curriculum vitae*, he lists his current position as a private practitioner in cardiovascular and thoracic surgery in San Diego, California. We need not look beyond the four corners of the report or *curriculum vitae* to determine his qualifications. *Palacios*, 46 S.W.3d at 878.

*Must the Experts be Licensed in Texas?*

In Point of Error Three, Providence argues that Dr. Koumjian is not qualified to opine on causation. The crux of the argument is that a physician licensed in another state may opine as to the applicable standard of care and any breaches thereof, but only a physician licensed in Texas may opine as to causation. We recently addressed this very issue in *Tenet Hospitals Limited, a Texas Limited Partnership, d/b/a Providence Memorial Hospital v. Boada*, 304 S.W.3d 528 (Tex.App.-- El Paso 2009, pet. denied) and disagreed with the hospital's statutory interpretation. We will not

revisit that holding here. We overrule Point of Error Three.

*Dr. Contin's Qualifications*

In Point of Error Four, Providence argues that Dr. Contin lacks the requisite qualifications to opine on the applicable standard of care. Having found that the expert reports of Dr. Koumjian and Nurse Tyler meet the requirements of Section 74.351,we need not address Dr. Contin's qualifications. We overrule Point of Error Four.

*Qualifications/ Standard of Care*

In Points of Error Five and Six, Providence argues that neither Dr. Koumjian nor Nurse Tyler is qualified to opine on the applicable standard of care.

<u>*Dr. Koumjian*</u>

Providence argues that even though Dr. Koumjian is a board certified cardiovascular surgeon, he does not claim to be knowledgeable or experienced on the standards of care applicable to hospitals or nurses. It suggests that merely working as a surgeon in a hospital is not analogous to experience in specialized nursing care or hospital policies and procedures.

Section 74.402(b) establishes that, in a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of medical care only if the person:

> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
>
> (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

TEX.CIV.PRAC.&REM.CODE ANN. § 74.402(b)(Vernon 2005).

Section 74.402(b) makes it clear that different standards of care apply to physicians and health care providers. *See Simonson v. Keppard*, 225 S.W.3d 868, 872 (Tex.App.--Dallas 2007, no pet.). When a physician fails to state in his expert report that he has knowledge of the standard of care applicable to the specific types of health care providers involved in the claim, or that he has ever worked with or supervised the specific types of health care providers involved in the claim, the physician is not qualified on the issue of whether the health care provider departed from the accepted standards of care for health care providers. *See id.* at 872-74. But if the physician states he is familiar with the standard of care for both nurses and physicians, and for the prevention and treatment of the illness, injury, or condition involved in the claim, the physician is qualified on the issue of whether the health care provider departed from the accepted standards of care for health care providers. *See San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 814 (Tex.App.--Houston [14th Dist.] 2008, no pet.)(distinguishing *Simonson* ). Further, if a physician states he is familiar with the standard of care and responsibilities and requirements for physician's assistants, and he has worked with, interacted with, and supervised physician's assistants, the physician is qualified on the issue of whether the health care provider departed from the accepted standards of care for health care providers. *See Cook v. Spears*, 275 S.W.3d 577, 582-84 (Tex.App.--Dallas 2008, no pet.) (distinguishing *Simonson* ). A physician is not required to state he is familiar with the core standards for nurse practitioners or physician's assistants. *See id.*

In *Simonson*, the Dallas Court of Appeals concluded the trial court abused its discretion when it denied a nurse practitioner's motion to dismiss because "[n]owhere in his affidavit does [the medical expert] state that he either has knowledge of the standard of care applicable to nurse practitioners or that he has ever worked with or supervised nurse practitioners." *Simonson*, 225

S.W.3d at 872. Such is not the case here. Dr. Koumjian's report states his personal experience: "I have been involved in the care of about 250 patients with problems similar to Mrs. Barnes." He continues:

> 10. I am a board certified cardiovascular surgeon presently practicing in San Diego, California. As a cardiovascular surgeon I am frequently involved in the surgical repair of injured blood vessels. I am also involved in the resuscitation and stabilization of patients with vascular injuries, blood loss and hypotension. The repair of injured blood vessels and stabilization of patients with hypotension was part of my training as a cardiovascular surgeon. I remain current with the literature in the field of cardiovascular surgery and attend medical education courses in the area of cardiovascular surgery.

His *curriculum vitae* also indicates that he is currently "Chief of Surgery" at Sharp Grossmont Hospital. His report coupled with his *curriculum vitae* adequately establish his qualifications to state the standard of care applicable to Providence in relation to the health care provider's care of Barnes. Not only has Dr. Koumjian demonstrated he has specific knowledge about the claim involved in this case, his position as Chief of Surgery necessarily entails supervision of and interaction with the requisite health care providers. Because Dr. Koumjian is qualified to opine on the applicable standard of care, we overrule Point of Error Five. And even if we were to find that Dr. Koumjian's report and *curriculum vitae* do not sufficiently show his qualifications to opine on the applicable standard of care, we may look to Nurse Tyler's report to meet this requirement. TEX.CIV.PRAC.& REM.CODE ANN. § 74.351(i).

### *Nurse Tyler*

As with Dr. Koumjian, Nurse Tyler must show she qualifies as an expert witness on the issue of whether the health care provider departed from accepted standards of medical care by showing that she:

> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant

health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

TEX.CIV.PRAC.&REM.CODE ANN. § 74.402(b). The definition of "practicing health care" includes:

(1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or

(2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider.

TEX.CIV.PRAC.&REM.CODE ANN. § 74.402(a). In her report, Nurse Tyler states:

My opinions in this case are based on my education, training and experience. 1 am a registered nurse and have spent most of my nursing career evaluating nursing care. In October 2005 I was practicing in the Office of the New Mexico Attorney General as a medical care investigator. My position required that I be a licensed, registered nurse. My job entailed reviewing complaints of substandard nursing care. As such, I was obligated to be familiar with nursing standards of care. From July 2002 to May 2005 I practiced as a Surveyor/Reviewer for the State of New Mexico. In this position I evaluated hospitals for quality of care and quality of nursing care. I was also employed as an investigator with The Board of Nurse Examiners for the State of Texas - January 1999-2001. This position required me to evaluate nursing conduct to determine if the conduct met the nursing standard of care.

I keep current by reading several nursing journals. My training and years of experience as a reviewer and as an investigator in the field of nursing, along with my reading and continuous nursing education have made me an expert regarding nursing standards of care. None of the standards of care I have described in this report would be considered highly specialized or esoteric. Rather these standards or care are basic standards of care taught in nursing school.

Nurse Tyler's resume also states she has been a registered nurse since 1990 and holds a National Certification as an Investigator/Inspector. Based upon her report and resume, she clearly possesses the requisite qualifications to opine on the applicable standard of care with regards to the

health care providers in this case. Nurse Tyler has demonstrated that she has the education, certifications, and eight and a half years of experience in many areas of nursing. She meets the definition of "practicing health care" because her investigator position is synonymous with a consulting health care provider who licensed, certified, or registered in the same field as the defendant health care provider. TEX.CIV.PRAC.&REM.CODE ANN. § 74.402(a)(2). We perceive no abuse of discretion in the trial court's finding that Nurse Tyler was qualified to opine on the applicable standard of care. We overrule Point of Error Six and affirm the judgment of the court below.


July 28, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, J., and Antcliff, Judge
Antcliff, Judge, sitting by assignment