

**IN THE**
**TENTH COURT OF APPEALS**

_____

**No. 10-17-00088-CV**

**ST. JOSEPH REGIONAL HEALTH CENTER,**

                                        **Appellant**

 **v.**

**MARIA GONZALES, INDIVIDUALLY AND AS**
**REPRESENTATIVE OF THE ESTATE OF PATRICIA GONZALES,**
                                        **Appellees**

_____

**From the 272nd District Court**
**Brazos County, Texas**
**Trial Court No. 16-000462-CV-272**

_____

**MEMORANDUM OPINION**

_____

In one issue, appellant, St. Joseph Regional Health Center (the "Hospital"),

challenges the trial court's denial of its motion to dismiss health-care-liability claims

brought by appellee, Maria Gonzales, individually and as representative of the estate of

Patricia Gonzales. In particular, the Hospital asserts that appellee's expert reports do not

constitute a good-faith effort, especially regarding the issue of causation. *See* TEX. CIV.

PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2017). Because we conclude that appellee's

expert reports are deficient as to causation, and because appellee is not entitled to a second thirty-day extension to cure the reports, we reverse and render.

## I.    BACKGROUND

On February 22, 2016, appellee filed wrongful-death and survival claims against the Hospital, alleging that the Hospital was negligent and grossly negligent in treating Patricia in January and February 2014.  The Hospital filed an original answer generally denying all of the allegations contained in appellee's suit.

Thereafter, on July 8, 2016, appellee served on the Hospital the expert report of Kelly K. Hill, R.N.  The Hospital filed a motion to dismiss and objections to Nurse Hill's expert report, arguing that Nurse Hill is not qualified to offer causation opinions.  In response to the Hospital's objections and motion to dismiss, appellee requested a thirty-day extension to cure deficiencies in her expert report.  *See id.* § 74.351(c).

On September 6, 2016, the trial court sustained the Hospital's objections to Nurse Hill's expert report and granted appellee a thirty-day extension to cure the defects in her report.  In an attempt to cure, appellee served on the Hospital the report of Eugene C. Deal Jr., M.D.  Once again, the Hospital filed a motion to dismiss and objections to appellee's expert reports.  In its latest motion to dismiss and objections, the Hospital contended that Dr. Deal failed to explain the "necessary 'how' and 'why' Defendant's alleged breach of the standard of care caused Plaintiff's respiratory failure attributing to death."  The Hospital further argued that Dr. Deal's report offered "no more than a bare

assertion, void of any detail, that Defendant's staff's alleged negligence allowed Patricia Gonzales's tracheostomy tube to become dislodged causing respiratory failure and death."

After a hearing, the trial court denied the Hospital's objections to Dr. Deal's expert report and motion to dismiss. This accelerated, interlocutory appeal followed. *See id.* § 51.014(a)(9) (West Supp. 2016) (permitting the appeal of an interlocutory order from a district court that "denies all or part of the relief sought by a motion under Section 74.351(b)"); *see also* TEX. R. APP. P. 28.1(a).

## II.    STANDARD OF REVIEW

We review all rulings related to Section 74.351 of the Civil Practice and Remedies Code under an abuse-of-discretion standard. *Jelinek v. Casas*, 328 S.W.3d 526, 538-39 (Tex. 2010); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). Although we defer to the trial court's factual determinations, we review questions of law de novo. *See Haskell v. Seven Acres Jewish Senior Care Servs., Inc.*, 363 S.W.3d 754, 757 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also Navarro Hosp., L.P. v. Washington*, No. 10-13-00248-CV, 2014 Tex. App. LEXIS 5010, at *4 (Tex. App.—Waco May 8, 2014, pet. denied) (mem. op.). A trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *See Poland v. Orr*, 278 S.W.3d 39, 45 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *see also Washington*, 2014 Tex. App. LEXIS 5010, at *4. An abuse of discretion occurs if the trial court fails to correctly apply the law to the

facts or if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see Haskell*, 363 S.W.3d at 757 (citing *Petty v. Churner*, 310 S.W.3d 131, 134 (Tex. App.—Dallas 2010, no pet.)).

### III.  APPLICABLE LAW

A plaintiff who asserts a health-care-liability claim, as defined by Chapter 74, must provide each defendant physician or health-care provider with an expert report which provides "a fair summary of the expert's opinions" as of the date of the report regarding the applicable standards of care, the manner in which the care rendered failed to meet the applicable standards, and the causal relationship between that failure and the claimed injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6); *see also Tex. Home Health Skilled Servs., L.P. v. Anderson*, No. 10-15-00440-CV, 2016 Tex. App. LEXIS 11319, at **6-7 (Tex. App.—Waco Oct. 19, 2016, no pet.) (mem. op.). "The purpose of the expert report requirement is to deter frivolous claims, not to dispose of the claims regardless of their merits." *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011).

When a plaintiff timely files an expert report and a defendant moves to dismiss on the basis that the report is insufficient, the trial court must grant the motion only if the report does not represent a good-faith effort to meet the statutory requirements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l); *see also Anderson*, 2016 Tex. App. LEXIS 11319, at *7. To constitute a good-faith effort, a report "must discuss the standard of care, breach,

and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875; *see Wright*, 79 S.W.3d at 52.

A report cannot merely state the expert's conclusions about these elements; instead, the report must explain the basis of the statements and link the conclusions to the facts. *Wright*, 79 S.W.3d at 52; *see Jelinek*, 328 S.W.3d at 539-40. A report that merely states the expert's conclusions about the standard of care, breach, and causation is deficient. *Palacios*, 46 S.W.3d at 879. Further, a report that omits any of the statutory elements is likewise deficient. *Id.* In determining whether the trial court's ruling on a motion to dismiss was correct, we review the information contained within the four corners of the report. *Wright*, 79 S.W.3d at 53. "The report can be informal in that the information in the report does not have to meet the same requirements as evidence offered in a summary-judgment proceeding or at trial." *Palacios*, 46 S.W.3d at 879.

Furthermore, reports may be considered together in determining whether a health-care-liability claimant provided a report meeting the statutory requirements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i); *see also Salais v. Tex. Dep't of Aging & Disability Servs.*, 323 S.W.3d 527, 534 (Tex. App.—Waco 2010, pet. denied). A single report need not "address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i); *see Anderson*, 2016

Tex. App. LEXIS 11319, at \*8.  But read together, the reports must provide a "fair summary" of the experts' opinions.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *see Barber v. Mercer*, 303 S.W.3d 786, 791 (Tex. App.—Fort Worth 2009, no pet.); *Walgreen Co. v. Hieger*, 243 S.W.3d 183, 187 n.2 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

### IV.    APPELLEE'S EXPERT REPORTS ON CAUSATION

In its sole issue on appeal, the Hospital contends that it was an abuse of discretion for the trial court to deny its motion to dismiss appellee's health-care liability claims.  In particular, the Hospital asserts that Dr. Deal's report is conclusory as to the required element of causation and, thus, is materially deficient.

As noted above, appellee tendered the expert reports of Nurse Hill and Dr. Deal.  However, pursuant to section 74.403 of the Civil Practice and Remedies Code, only physicians are qualified to render causation opinions in health-care liability claims.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (West 2017); *see also Petty*, 310 S.W.3d at 135.  As such, we focus only on Dr. Deal's report in analyzing the causation element.

After providing a brief recitation of the facts surrounding the complained-of incident, Dr. Deal provided the following information regarding the elements of appellee's claims:

**St. Joseph Regional Health Center**

**Standard of Care**
The standard of care for a medical facility is to provide and to ensure that all patients receive appropriate care regardless of financial means.  This

includes safety, monitoring, and communication with both the patient and the physicians, as well as the nursing staff.

**Breach of the Standard of Care**

Ms. Gonzales had removed her tracheostomy tube twice, in the 48 hours prior to her death. The standard of care would dictate that the patient should have been on a continuous pulse oximeter. This would have allowed the staff to note her oxygen level decreasing, and they would have been able to respond to any change in her condition. There is no documentation, in the medical record, of the patient being on a continuous pulse oximeter.

The use of restraints on Ms. Gonzalez [sic] is documented in her medical records, which were first initiated on January 23, 2014. However, the use of restraints did not occur on the day prior to her death or the day of her death. The medical record states that Ms. Gonzalez [sic] pulled out her tracheostomy tube, not once, but twice on January 18, 2014, while not restrained.

The Medical Record documents the fact that Patricia Gonzalez' [sic] vital signs were recorded at 0000; midnight on February 20, 2014. At 0440, the nurse noted no distress. At 0511, nurse found Ms. Gonzalez [sic] unresponsive and the tracheostomy tube removed. A code was called, and patient was pronounced dead at 0529. It is a breach of the standard of care to have no vital signs documented from midnight until the code was called.

## Conclusion

In my opinion, based on my experience, education, and training, it is certain within a reasonable degree of medical probability that the actions of the staff of St. Josephs [sic] Regional Health Center directly lead to the death of Patricia Gonzalez [sic]. Ms. Gonzalez [sic] did not receive medical care and treatment at or above the standard of care which allowed her tracheostomy tube to become dislodged, resulting in respiratory failure, which attributes to her death.

Though not labeled "causation," we presume that Dr. Deal's "Conclusion" section addresses the causation element. With regard to causation, the Texas Supreme Court has stated:

> An expert cannot simply opine that the breach caused the injury. Stated so briefly, the report fails the second *Palacios* element—it does not give the trial court any reasonable basis for concluding that the lawsuit has merit. . . . An expert's conclusion that "in medical probability" one event caused another differs little, without an explanation tying the conclusion to the facts, from an *ipse dixit*, which we have consistently criticized. . . . Instead, the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented. While we have said that no "magical words" need be used to meet the good-faith requirement, mere invocation of the phrase "medical probability" is likewise no guarantee that the report will be found adequate.

*Jelinek*, 328 S.W.3d at 539-40 (internal citations omitted & emphasis in original).

As noted above, Dr. Deal stated that the Hospital breached the standard of care by failing to: (1) monitor Patricia with a continuous pulse oximeter; (2) use wrist restraints; and (3) document vital signs. We first note that "[m]ere reference to general concepts regarding assessment, monitoring, and interventions are insufficient as a matter of law." *Regent Health Care Ctr. of El Paso, L.P. v. Wallace*, 271 S.W.3d 434, 441 (Tex. App.—El Paso 2008, no pet.) (citing *Palacios*, 46 S.W.3d at 873). Furthermore, in his "Conclusion" section, Dr. Deal opined that Patricia died of respiratory failure caused by the dislodgement of her tracheostomy tube. However, the basis for this conclusion is not explained in the report. In fact, there is no explanation as to how and why the dislodgement of a tracheostomy tube resulted in respiratory failure. *See Van Ness v. ETMC First Physicians*,

461 S.W.3d 140, 142 (Tex. 2015) ("An expert must explain, based on facts set out in the report, *how* and *why* the breach caused the injury." (emphasis in original)); *see also Tenet Hosps., Ltd. v. Barnes*, 329 S.W.3d 537, 543 (Tex. App.—El Paso 2010, no pet.) ("There can be no analytical gap between a breach of the standard of care and the ultimate harm."); *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.) (noting that courts are precluded "from filling gaps in a report by drawing inferences"). This is particularly important in this case given the fact that Dr. Deal described that Patricia "was doing well" after two prior tracheostomy-tube dislodgements. Moreover, Dr. Deal also noted in his report that Patricia had recently been successfully weaned from the ventilator and that her condition had improved to the point that she was awaiting transfer to a long-term-care facility. In essence, Dr. Deal's opinion appears to be premised solely upon the close temporal proximity between the dislodgement and Patricia's death. *See Wallace*, 271 S.W.3d at 441 ("[W]hile the report indicates that the breach of the standard of care resulted in worsening of the described skin conditions, there is no linkage to the cause of death, aside from the assertion of a close temporal proximity between the conditions and the premature death.").

Based on the foregoing, we conclude that appellee's expert reports are deficient as to the causation element, because an analytical gap exists between the breach and the injury that cannot be cured without drawing impermissible inferences. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *see also Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328

S.W.3d 539-40; *Barnes*, 329 S.W.3d at 543; *Webb*, 228 S.W.3d at 279.  As such, we hold that the trial court abused its discretion in denying the Hospital's motion to dismiss.  *See Jelinek*, 328 S.W.3d at 539-40; *Wright*, 79 S.W.3d at 52-53; *Palacios*, 46 S.W.3d at 880.

Furthermore, under section 74.351(c) of the Civil Practice and Remedies Code, a court may only grant one thirty-day extension to cure any deficiencies in an expert report. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(c); *see also Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008) ("As Leland and the dissent read the statute, a thirty-day extension is only permitted if the *trial court* determines that the report is deficient.  We see nothing in the statute's text to support such an interpretation.  Rather, the provision states that one thirty-day extension may be granted when "elements of the report are found deficient," and does not confine that review to a particular court." (emphasis in original)).  Because appellee had already obtained one thirty-day extension to cure deficiencies in her expert reports, we conclude that she is not entitled to another extension of time to cure these deficiencies.  *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351(c); *see also Leland*, 257 S.W.3d at 207.  We sustain the Hospital's sole issue on appeal.

## V. CONCLUSION

Having sustained the Hospital's sole issue on appeal, we reverse the trial court's order denying the Hospital's motion to dismiss and render dismissal of all of appellee's claims against the Hospital with prejudice.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §

74.351(b)(2) (providing for the dismissal of a health-care-liability claim with prejudice if the claimant fails to timely serve a compliant expert report).

                                        AL SCOGGINS
                                        Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Reversed and rendered
Opinion delivered and filed June 14, 2017
[CV06]

