Opinion issued May 19, 2011

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In
The

Court of
Appeals

For
The

First District
of Texas

———————————

NO. 01-10-00106-CV

———————————

Certified EMS, Inc. d/b/a CPnS Staffing, Appellant

V.

Cherie Potts, Appellee



 



 

On Appeal from the 270th District Court

Harris County, Texas



Trial
Court Case No. 2009-42236

 



 

 

OPINION ON REHEARING

          In this interlocutory appeal,
appellant, Certified EMS, Inc. d/b/a/ CPnS Staffing (“Certified EMS”),
challenges the trial court’s order denying its motion to dismiss the health
care liability claim of appellee, Cherie Potts. 
Certified EMS has filed a motion for en banc reconsideration, and Potts
has filed a response to that motion.  We
construe Certified EMS’s motion as both a motion for rehearing and a motion for
en banc reconsideration.  See Brookshire Bros., Inc. v. Smith, 176
S.W.3d 30, 39 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).  We withdraw our January 27, 2011 opinion and
judgment and replace them with this opinion and judgment; the motion for en
banc reconsideration is, therefore, moot. 
See Richardson‑Eagle, Inc. v. William M. Mercer, Inc., 213
S.W.3d 469, 472 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

Potts sued Certified EMS alleging that it was directly
and vicariously liable for an assault by one of its employees.  On appeal, Certified EMS contends that the
trial court erred by (1) granting Potts an extension of time to cure
deficiencies in her expert reports because the original reports served by Potts
do not qualify as expert reports and, therefore, the first motion to dismiss
should have been granted, and (2) denying Certified EMS’s second motion to
dismiss based on deficiencies in the ultimate reports filed by Potts.  We conclude that we lack jurisdiction over
Certified EMS’s appeal of the first motion to dismiss, which concerns Potts’s
reports that were filed before the court granted an extension of time to file
corrected reports.  Although the expert
reports ultimately filed by Potts were inadequate as to her pleaded theories
for direct liability, we conclude the trial court properly denied Certified
EMS’s motion to dismiss because Potts’s expert report was adequate for
vicarious liability.  We affirm the order
of the trial court.

Background

          Potts was admitted to Christus St.
Catherine’s Hospital in Katy, Texas, in November 2008 after experiencing
complications from a recurring kidney infection.  Potts alleged that, during her stay at
Christus, Les Hardin, a male nurse, asked her and her husband several intimate
questions concerning her sexual practices, which she or her husband
answered.  She further alleged that, on
the day following the questioning, Hardin returned to her room in the late
evening.  She explained that Hardin, acting
under the false pretense of performing a normal examination, proceeded to
examine her in a manner that left her breasts exposed and that he touched her
breasts and other areas of her body in an inappropriate and unwelcome manner.

          Potts reported Hardin’s conduct to the
nursing risk-management supervisor. 
Eventually, it was disclosed that Hardin was not a regular employee of
the hospital but was temporarily working at the hospital as an employee of
Certified EMS, a nurse staffing agency. 
After the incident, Potts complained of anxiety and panic attacks.  She eventually brought suit against Certified
EMS asserting that it was vicariously liable for Hardin’s conduct under a
respondeat superior theory and directly liable for its own negligence in
training and supervising Hardin.

          Potts timely served two reports that
purported to be expert reports under Chapter 74 of the Texas Civil Practice and
Remedies Code.  The first report, by
Nurse Foster, stated that Hardin’s conduct was evidence of substandard nursing
practice by Hardin, whom she identified as an employee of a “Temporary Nursing
Agency/Service, Name of Agency or Director are unknown at this time.”  The second report, by Dr. Kit Harrison,
Ph.D., stated that Potts is suffering psychological injuries due to assault.  Asserting the reports were statutorily
insufficient so that they effectively constituted no report, Certified EMS
filed its first motion to dismiss, claiming that Nurse Foster’s and Dr.
Harrison’s expert reports do not identify Certified EMS by name, state the
standard of care applicable to Certified EMS, describe how Certified EMS’s
conduct fell below that standard of care, and failed to show how Certified
EMS’s conduct or omissions caused Potts’s injury.  The motion also asserts that the reports are conclusory
concerning a description of the standard of care applicable to Nurse Hardin,
how Nurse Hardin’s conduct fell below that standard of care, and how that
conduct caused Potts’s injury.  Finally,
as to causation, the motion asserts that the reports fail to show that Nurse
Foster and Dr. Harrison are qualified to offer opinions on causation because
neither is a physician.

          The trial court denied Certified EMS’s
motion to dismiss and granted Potts a 30-day extension to amend or supplement
her reports.  Before the expiration of
the 30-day extension, Potts filed a supplemental report from Nurse Foster and a
report with curriculum vitae from a new expert, Dr. Milton Altschuler, M.D.,
responding to Certified EMS’s objections concerning causation.  Certified EMS timely filed a second motion to
dismiss, which the trial court subsequently denied.  The second motion to dismiss repeats
the challenges made earlier in its first motion to dismiss.  The second motion also asserts that Dr. Altschuler’s report was
not timely filed and constitutes “no report” because it fails to specify
Certified EMS by name or to implicate Certified EMS’s specific conduct.  Additionally, it asserts that Dr. Altschuler
is not qualified because his report and curriculum vitae do not mention that he
is actively practicing medicine or otherwise qualified to opine on causation in
the present case.  Finally, the second
motion asserts that Dr. Altschuler’s report is conculsory and insufficient as
to proximate causation.

          Viewed together, the expert reports
implicate Hardin’s conduct by explaining that he touched Potts’s body in a
sexually inappropriate manner when he was caring for her as her nurse while she
was in a hospital.  The expert
reports’ description of Hardin as an employee of Certified EMS support Potts’s
theory that Certified EMS is vicariously liable under the doctrine of
respondeat superior.  The expert reports, however,
do not specifically address how Certified EMS might be directly liable for its
own conduct.  

Standard of Review

          We review the trial court’s rulings
concerning expert reports for abuse of discretion.  Walker
v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003); Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 877 (Tex.
2001).  A trial court abuses its
discretion if it acts arbitrarily or unreasonably without reference to any
guiding rules or principles.  See Walker, 111 S.W.3d at 62.  Statutory construction, however, is a legal
question that we review de novo.  HCBeck,
Ltd. v. Rice, 284 S.W.3d 349, 352 (Tex. 2009).

First Motion
to Dismiss

          In its first four issues, Certified
EMS contends that the trial court abused its discretion by granting an
extension of time to cure deficiencies because the initial reports filed by
Potts were so inadequate as to constitute no expert report.  In light of the trial court’s extension of
time to cure deficiencies in the original reports filed by Potts, we conclude
we lack jurisdiction over Certified EMS’s first four issues, in which it
challenges the deficiencies in her original reports.  

          A.      Applicable Law

Pursuant
to section 74.351, medical-malpractice plaintiffs must serve each defendant
physician and health care provider with an expert report or voluntarily nonsuit
the action.  Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a) (West Supp. 2010).  If a
claimant timely furnishes an expert report, a defendant may file a motion
challenging the report’s adequacy.  Id.
 The trial court shall grant the
motion only if it appears, after a hearing, that the report does not represent
a good faith effort to comply with the statutory definition of an expert
report.  See id. § 74.351(l).   “‘Expert report’ means
a written report by an expert that provides a fair summary of the expert’s
opinions as of the date of the report regarding applicable standards of care,
the manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.” 
Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(r)(6); Jelinek
v. Casas, 328 S.W.3d 526, 540 (Tex. 2010) (“[T]he plaintiff need not
marshal all of his proof in the [expert] report, but he must include sufficient
detail to allow the trial court to determine if the claim has merit.”); Palacios,
46 S.W.3d at 877–78 (expert report must include expert’s opinions on three
statutory elements—standard of care, breach, and causation); Gray v. CHCA
Bayshore, L.P., 189 S.W.3d 855, 859 (Tex. App.—Houston [1st Dist.] 2006, no
pet.).  “If an expert report has not been
served . . . because elements of the report are found deficient, the court may
grant one 30-day extension to the claimant in order to cure the
deficiency.”  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).  

Section 51.014(a)(9) of the Texas Civil Practice and
Remedies Code authorizes an interlocutory appeal from an order that denies all
or part of the relief sought by a motion under section 74.351(b).  Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(a)(9) (West 2006).  If no report is filed by the deadline, a
defendant may properly appeal an order denying its motion to dismiss.  Morris
v. Umberson, 312 S.W.3d 764, 766 (Tex. App.—Houston [1st Dist.] 2009, pet.
denied).  When a report has been timely
served, however, a defendant may not appeal from an order denying a motion to
dismiss if the trial court also grants an extension under section 74.351(c) of
the Texas Civil Practice and Remedies Code. 
Id. (citing Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9)).  “If a defendant could immediately appeal the
denial of his motion to dismiss, the court of appeals would be reviewing the
report’s sufficiency while its deficiencies were presumably being cured in the
trial court.”  Badiga v. Lopez, 274 S.W.3d 681, 684 (Tex. 2009).  

          B.      Analysis

          Potts did file timely reports that she
asserts would satisfy the requirements for an expert report.  Certified EMS asserts that these reports were
so inadequate as to constitute as no expert reports.  See
Ogletree
v. Matthews, 262 S.W.3d 316,
323 (Tex. 2007) (Willett, J., concurring) (describing some reports as so
deficient as to constitute no report). 
Assuming that a purported report could be so deficient that it is
effectively no report, we find that these reports do not meet that standard.  See id.;
see also Samlowski v. Wooten, 332 S.W.3d 404, 410
(Tex. 2011) (plurality op.) (Medina, J. writing, joined by Jefferson and Hecht,
JJ.) (“A deficient
expert report . . . is the predicate for the exercise of the trial
court’s discretion under section 74.351(c)” to grant extension of time.);
id. at *12 (Wainwright, J. dissenting in part and concurring in
part) (“Unless an expert report addresses all of the required elements, section
74.351(c) does not authorize a trial court to consider an extension.”) (citing Walker v. Gutierrez, 111 S.W.3d 56, 65
(Tex. 2003) (under predecessor statute, expert report that omits at least one
of the statutorily-required elements of an expert report—standard of care,
breach, and causation—is not eligible for a grace period)).

In examining whether an
inadequate report is effectively no report, courts have considered whether the
report implicates the conduct of the defendant, regardless of whether the
defendant is actually identified by name. 
Morris, 312 S.W.3d at 768
(citing Ogletree, 262 S.W.3d at 321)
(“Even though the report did not mention the healthcare defendant by name, the
Supreme Court held, ‘[b]ecause a report that implicated [the healthcare
defendant’s] conduct was served and the trial court granted an extension, the
court of appeals could not reach the merits of the motion to dismiss,’ and ‘the
court of appeals correctly determined that it lacked jurisdiction over [the
healthcare defendant’s] appeal.’”); McKeever
v. Cerny, 266 S.W.3d 451, 454 (Tex. App.—Corpus Christi 2008, no pet.)
(report that implicates doctor but not physician assistant who assisted doctor
is considered to be more than “no report” so that trial court may grant
extension of time to cure its deficiency).[1]  

Although they do not mention
the employer specifically by name, the first reports timely filed by Potts
implicate the conduct of Hardin and his employer.  Foster’s report mentions Hardin’s improper conduct and
explains that at the time of the conduct he was employed by a “Temporary
Nursing Agency / Service.”  This was
sufficient to implicate Hardin’s employer, Certified EMS, for the purpose of
the trial court granting an extension of time to Potts to cure the deficiencies
in her reports.  Id.; Morris,
312 S.W.3d at 768; see also
Gardner v. U.S. Imaging, Inc., 274 S.W.3d 669, 671–72 (Tex. 2009) (“When a
party’s alleged health care liability is purely vicarious, a report that
adequately implicates the actions of that party’s agents or employees is
sufficient.”); Univ. of Tex. Sw. Med. Ctr. v. Dale, 188 S.W.3d 877, 879 (Tex.
App.—Dallas 2006, no pet.) (expert report not required to mention UT
Southwestern by name for vicarious liability).  

The original reports were sufficient to implicate the
conduct of Certified EMS.  Because the trial court granted an extension
of time to cure deficiencies in the reports originally filed by Potts, we lack
jurisdiction over Certified EMS’s appeal of the denial of its first motion to
dismiss and dismiss its first four issues. 
See Ogletree, 262 S.W.3d at
321 (“[I]f a deficient report is served and the trial court grants a thirty day
extension, that decision—even if coupled with a denial of a motion to
dismiss—is not subject to appellate review.”).  


Second Motion
to Dismiss

          In
its fifth issue, Certified EMS contends that the trial court erred by denying
its second motion to dismiss. 
Specifically, Certified EMS asserts that Nurse Foster is not qualified
to render the expert opinion and that her supplemental report is deficient
because it does not identify the standard of care applicable to Certified EMS
or the alleged breaches of the standard of care.  Certified EMS also challenges the report of
Dr. Altschuler by contending it does not implicate the conduct of Certified
EMS. 

          A.      Qualifications of Nurse Foster

          Section 74.402, in pertinent part,
provides,

[A] person may qualify as an expert witness on the issue
of whether the health care provider departed from accepted standards of care
only if the person: (1) is practicing health care in a field of practice that
involves the same type of care or treatment as that delivered by the defendant
health care provider, if the defendant health care provider is an individual,
at the time the testimony is given or was practicing that type of health care
at the time the claim arose . . . .

 

Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b) (West
2005).  “Practicing health care” includes
“serving as a consulting health care provider and being licensed, certified, or
registered in the same field as the defendant health care provider.”  Id.
§ 74.401(a).

          Certified EMS objected to Nurse
Foster’s qualifications because she “does not state that she actively practices
in a field requiring her to provide nursing care to a patient in a hospital
setting.”  Certified EMS’s objection
ignores the plain language of section 74.402(a) that provides a consulting
health care provider is “practicing health care.”  Id.  Nurse Foster’s curriculum vitae states that
she is a “Nurse Consultant/Expert Witness” and a “Quality Review Nurse” for the
Texas Department of Aging and Disability Services.  Her curriculum vitae and report also show
that she is licensed as a nurse and holds a number of nursing
certifications.  Thus, the record
contains evidence that Nurse Foster “serv[es] as a consulting health care
provider and [is] licensed, certified, or registered in the same field as the defendant
health care provider.”  See id. 
Accordingly, the trial court did not abuse its discretion in determining
Nurse Foster is qualified to offer an expert report in this case.

          B.      Sufficiency
of Reports to Implicate Certified EMS’s Conduct 

Certified EMS contends that the reports by Nurse Foster
and Dr. Altschuler are deficient because the reports do not implicate Certified
EMS’s conduct.  Potts responds that she asserts
in her petition
both direct liability and vicarious liability theories against Certified
EMS.  Potts explains that the trial court
properly denied the motion to dismiss because Certified EMS only challenged the
direct liability theories and left the vicarious liability theory unchallenged
by accepting the adequacy of the report’s treatment of Hardin’s conduct.  In addressing whether the trial court erred
in denying the second motion to dismiss, we resolve the parties’ dispute as to whether
the expert report must address both vicarious and direct liability theories for
both theories to move past the expert report stage or whether a report adequate
as to one of those theories is sufficient for the entire cause of action to
move to the next stage.  We address (1)
the law concerning construction of a statute, (2) the plain language of the
statute, (3) the objectives of the legislation and consequences of the
construction of the statute, and (4) the conflict in the existing case law.

                   1.       Law Concerning Construction of Statute

          In construing a statute, we must
“ascertain and give effect to the Legislature’s intent.”  HCBeck, Ltd., 284 S.W.3d at
352.  We begin with the “plain and common
meaning of the statute’s words” to ascertain the Legislature’s intent.  Id. (citing Tex. Dep’t of Transp.
v. City of Sunset Valley, 146 S.W.3d 637, 642 (Tex. 2004)).  “If the Legislature provides definitions for
words it uses in statutes, then we use those definitions in our task.”  Hernandez v. Ebrom, 289 S.W.3d 316, 318 (Tex.
2009) (citing Tex. Gov’t Code Ann. § 311.011(b) (West 2005)).  We rely on the plain meaning of the text unless
such a construction leads to absurd results. 
City of Rockwall v. Hughes,
246 S.W.3d 621, 625–26 (Tex. 2008).  We consider the statute as a whole and not
its provisions in isolation.  Cont’l
Cas. Co. v. Downs, 81
S.W.3d 803, 805 (Tex. 2002).  “We also consider the
objective the Legislature sought to achieve through the statute, as well as the
consequences of a particular construction.” 
HCBeck, Ltd., 284 S.W.3d at 352 (citing Tex. Gov’t Code Ann. § 311.023(1), (5) (West 2005)).  

                   2.       Analysis
of Plain Language of Statute

           We begin by examining the plain language of
the statute.  Id.  In pertinent part, Chapter
74 of the Civil Practice and Remedies Code states,

(a)   In a
health care liability claim, a claimant shall, not later than the 120th day
after the date the original petition was filed, serve on each party or the
party’s attorney one or more expert reports, with a curriculum vitae of each
expert listed in the report for each physician or health care provider against whom a liability claim is asserted.  . . . Each defendant physician or health care
provider whose conduct is implicated in a report must file and serve any
objection to the sufficiency of the report not later than the 21st day after
the date it was served, failing which all objections are waived.

 

(b)   If, as to a defendant physician or health
care provider, an expert report has not been served within the period specified
by Subsection (a), the court, on the motion of the affected physician or health
care provider, shall . . . enter an order that . . . dismisses the claim with respect to the
physician or health care provider, with prejudice to the refiling of the claim.


 

Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (emphasis
added).  

Chapter 74 defines “claim” as “a health care liability
claim.”  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(2).  In turn, a “health care liability claim” is
defined as:

a cause of action against a health care provider or physician
for treatment, lack of treatment, or other claimed departure from accepted
standards of medical care, or health care, or safety or professional or
administrative services directly related to health care, which proximately
results in injury to or death of a claimant, whether the claimant’s claim or
cause of action sounds in tort or contract.

 

Id. § 74.001(13) (West
Supp. 2010) (emphasis added).  Although not defined by Chapter
74, a cause of action has been described by the Texas Supreme Court as
“a fact or facts entitling one to institute and maintain an action, which must
be proved in order to obtain relief” and as a “group of operative facts giving
rise to one or more bases for suing; a factual situation that entitles one
person to obtain a remedy in court from another person.”  In re
Jorden, 249 S.W.3d 416, 421 (Tex. 2008) (orig. proceeding) (quoting A.H. Belo Corp. v. Blanton, 129 S.W.2d
619, 621 (Tex. 1939); Black’s Law
Dictionary 235 (8th ed. 2004)).  

Replacing the word “claim” with the term “cause of
action” and its definition, the plain language in section 74.351(a) requires
the claimant to file an expert report for each physician or health care
provider against whom a cause of action — i.e., group of operative facts
giving rise to one or more bases for suing — is asserted.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a); In re Jorden, 249 S.W.3d at 421 (defining “cause of action”).  By focusing on a cause of action rather than
particular liability theories that may be contained within a cause of action,
the plain language does not require an expert report to set out each and every
liability theory that might be pursued by the claimant as long as at least one
liability theory within a cause of action is shown by the expert report.  See Tex. Civ. Prac. & Rem. Code § 74.351(a); In re Jorden, 249 S.W.3d at 421.    

Similarly, by replacing the word
“claim” with the term “cause of action” and its definition, the plain language
in section 74.351(b) requires dismissal of the cause of action, or group of operative
facts giving rise to one or more bases for suing, with respect to the physician or health care
provider.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(b); In
re Jorden, 249 S.W.3d at 421.  By
focusing on a cause of action rather than particular liability theories that
may be contained within a cause of action, the plain language establishes that
the entire cause of action is dismissed with respect to the defendant when the
claimant has failed to file an expert report that sets out at least one
liability theory within a cause of action. 
See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(b); Yamada
v. Friend, No. 08-0262, 2010 WL 5135334, at *3 (Tex. Dec. 17, 2010) (“The
TMLA requires the trial court to dismiss a suit asserting health care liability
claims against a physician or health care provider if the plaintiff does not
timely file an expert report as to that defendant.”); In re Jorden, 249 S.W.3d at 421.  But if at least one liability theory within a
cause of action is shown by the expert report, then the claimant may proceed
with the entire cause of action against the defendant, including particular
liability theories that were not originally part of the expert report, as long
as those liability theories are contained within the same cause of action.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b); Yamada, 2010 WL 5135334, at *3; In re Jorden, 249 S.W.3d at 421.  We conclude the plain language of the statute
focuses on each defendant and the cause of action against that defendant, not
each basis for suing or theory of liability. 
See Hughes, 246
S.W.3d at 625–26 (stating courts must rely on plain language of statute).

3.       Objectives
of Legislation and Consequences of Construction

An examination of other sections in Chapter 74
suggests that the focus is on causes of action rather than particular
individual liability theories contained within a cause of action.  The expert report is due within 120 days of
the filing of the original petition.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2010).  Additionally, prior to the service of the
expert report, discovery is limited to written discovery with no more than two
depositions on written questions and no discovery from nonparties.  See
Tex. Civ. Prac. & Rem. Code Ann. §
74.351(s), (u).  The short deadline for
filing an expert report and the limited discovery make it impractical to expect
a claimant to know all possible liability theories within a cause of action
when he files his expert report.    

An expert report required
by section 74.351(a) is meant to serve two purposes: (1) “to inform the
defendant of the specific conduct the claimant is questioning” and (2) “to ‘provide
a basis for the trial court to conclude that the claim has merit.’”  Leland
v. Brandal, 257 S.W.3d 204, 206–07 (Tex. 2008) (quoting Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 879 (Tex. 2001)). 
In this way, section 74.351 serves as a “gate-keeper.”  TTHR,
L.P. v. Guyden, No. 01-09-00523-CV, 2010 WL 3448099, at *2 (Tex.
App.—Houston [1st Dist.] Aug. 31, 2010, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351; Murphy v. Russell,
167 S.W.3d 835, 838 (Tex. 2005)).  The
expert report requirement “establishes a threshold over which a claimant must
proceed to continue a lawsuit.” Murphy,
167 S.W.3d at 838.  Because it is a
preliminary threshold, the expert report may not be admitted as evidence, used
in a deposition, trial or other proceeding, or even referred to for any purpose
during the suit.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(k); see
also id. § 74.351(t) (providing if claimant uses expert report then
prohibition in subsection (k) is waived). 
Once the expert report requirement is met, the gate-keeping purpose has
been achieved, and the claimant’s case may proceed, including full
discovery.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(s) (providing all but limited discovery is
stayed until expert report required by § 74.351(a) is served).  Therefore, if the claimant timely serves an
expert report that adequately addresses at least one liability theory against a
defendant health care provider, the suit can proceed, including discovery,
without the need for every liability theory to be addressed in the report.  See
Baylor Coll. of Med. v. Pokluda, 283
S.W.3d 110, 123 n.3 (Tex. App.—Houston [14th Dist.] 2009, no pet.)
(explaining that dismissal of health care liability claim was not warranted
because expert report satisfied section 74.351(r)(6)’s requirement with respect
to alleged deviation from standard of care during surgery “regardless of
whether [the] report also satisfies section 74.351(r)(6)’s requirements with
respect to [doctor’s] alleged deviations from standard of care before
surgery.”).

In its motion for en banc reconsideration, Certified
EMS argues that our holding contravenes the public policy behind Chapter 74,
namely, “to inform the defendant of the specific conduct the claimant is
questioning” in the health care liability claim.  Leland,
257 S.W.3d at 206–07.  Certified EMS
interprets this purpose to mean that an expert report is intended to put the
defendant on notice as to the “applicable standards of care, the manner in
which the care rendered by the physician or health care provider failed to meet
the standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.”  Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(r)(6).  Certified EMS notes that our holding
permits a plaintiff in a health care liability claim to plead a vicarious
liability theory against a defendant, serve an expert report adequate as to that
theory, but then later plead a direct liability theory against the same defendant
without ever having to submit an expert report specifically addressing the
standard of care, the failure to meet that standard, and causation as to the
direct liability theory.  Observing that an
expert report can be adequate as to a vicarious liability theory without
mention of any specific conduct of the defendant, Gardner v. U.S. Imagining, Inc., 274 S.W.3d 669, 671–72 (Tex.
2008), Certified EMS contends that our holding contradicts Chapter 74’s notification
policy by allowing a plaintiff to assert a direct liability claim without ever informing
the defendant of any of its specific conduct. 


We disagree that our holding permits a plaintiff to
proceed  without giving a defendant notice of the cause of action.  A
plaintiff receives notice of a cause of action through the requirement that at
least one liability theory must be adequate. 
Although our holding allows a plaintiff to pursue a liability theory not
found in the expert report, he may do so only if the additional theory arises out
of the same group of operative facts set forth in the expert report and is
asserted against the same defendant.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a); In re Jordan, 249 S.W.3d at 421 (defining “cause of action” as
“group of operative facts giving rise to one or more bases for suing”).  The defendant, therefore, is on notice
concerning the conduct that forms the basis of the cause of action.

Our holding not only places the defendant on notice
concerning the cause of action, but it also satisfies the other purpose of the
expert report by functioning as a gatekeeper. 
We require early dismissal of a particular defendant if the expert
reports fail to show that there is a cause of action against a defendant.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(b), (s), (u); TTHR,
2010 WL 3448099, at *2; Leland, 257
S.W.3d at 207.

          If we were to narrowly construe the
word “claim” to mean a particular liability theory—rather than the group of
operative facts giving rise to one or more basis for suing—the dismissal
contemplated by section 74.351(b) would require dismissal with prejudice only
as to that particular theory.  This is
contrary to the intent of the statute to dismiss early a defendant from a
lawsuit.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(b). 
The interpretation suggested by Certified EMS would require the
dismissal of only the particular liability theory not shown by the expert
report rather than the dismissal of the entire cause of action.  Section 74.351(b) states that the trial court
shall enter an order that “dismisses the claim with respect to the physician or
health care provider, with prejudice to the refiling of the claim.”  Id.  By applying the statutory definition for
claim, which is “cause of action,” the section requires that the trial court
enter an order that dismisses the cause of action with respect to the physician
or health care provider with prejudice to the refiling of the cause of
action.  Therefore, under this
interpretation, a plaintiff could not continually splice a cause of action into
multiple liability theories and continue to file these alternate theories
without prejudice if the particular liability theory had not been presented
before in a pleading.

          Chapter 74’s focus on cause of
action—“group of operative facts giving rise to one or more basis for
suing”—means that the failure to provide an expert report adequate as to at
least one liability theory arising from the “group of operative facts” requires
the dismissal with prejudice of all liability theories within that cause of
action.  Although it is correct to
observe that a plaintiff may proceed against a defendant if he asserts at least
one liability theory within a cause of action, it must also be noted that a
defendant is entitled to dismissal with prejudice of all liability theories
within a cause of action if no liability theory is timely shown by an expert
report.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(a), (b). 
The dismissal of an entire cause of action satisfies the intent of the Legislature
to require the early dismissal of defendants from frivolous lawsuits.  See
Leland, 257 S.W.3d at 208 (noting purpose of section 74.351 is to “reduce
excessive frequency and severity of health care liability claims” while
striking balance between “eradicating frivolous claims and preserving
meritorious ones”).  Because the intent
of the Legislature is to require the early dismissal of the entire cause of
action from frivolous lawsuits filed against defendants, we are unpersuaded by
Certified EMS’s argument that our decision would allow a plaintiff, after the
expert report filing stage, to later dismiss vicarious liability theories and
pursue direct liability theories never presented in an expert report.   As we have noted above, the purpose of the
expert report is to serve as a gatekeeper that allows nonfrivolous causes of
action against a defendant to move forward past an initial stage so that full
discovery concerning the lawsuit may take place.  After full discovery has taken place, a
plaintiff’s approach to a lawsuit might vary from its initial approach, which
is permitted under the expert report statute, as long as the liability theories
underlie the same cause of action.  See In re Jorden, 249 S.W.3d at 421
(explaining that “health care liability claim” includes potential claims not
yet filed).

4.       Conflict
in the Case Law  

The Supreme Court of Texas has not directly decided
whether an expert report must set out each and every liability theory within a cause of
action.  The court has discussed
the meaning of “cause of action” as used by Chapter 74 by stating, “The statute
here confirms in several places that the term ‘cause of action’ was used in the
general sense relating to underlying facts rather than a more limited sense
applicable only to filed suits.”  Id. (determining rule 202 depositions
disallowed by statutory language in chapter 74).  Though indirect, the court has expressed
approval of an examination of the general, underlying facts to determine what
constitutes a cause of action under Chapter 74. 
See Yamada, 2010 WL 5135334, at *5 (“Our prior decisions are to the
effect that if the gravamen or essence of a cause of action is a health care
liability claim, then allowing the claim to be split or spliced into a
multitude of other causes of action with differing standards of care, damages,
and procedures would contravene the Legislature’s explicit requirements.”); In re Jorden, 249 S.W.3d at 421.[2] 

Intermediate courts of appeals are split concerning
whether an expert report adequate as to at least one liability theory within a
cause of action is sufficient to permit other liability theories within the
same cause of action to proceed although the expert report is deficient with
respect to the other theories.[3]  Compare
Pokluda, 283 S.W.3d at 123
n.3 (declining to address adequacy of report concerning pre-surgery breaches of
standard of care when expert report adequately addressed breaches occurring
during surgery),[4]
Pedroza v. Toscano, 293 S.W.3d 665,
668 (Tex. App.—San Antonio 2009, no pet.) (concluding that when testifying
expert relied on different acts than those disclosed by the Chapter 74 expert
report, testifying expert was not precluded from testifying because he was “not
asserting a different cause of action, only a different negligence theory”), and Schmidt v. Dubose, 259 S.W.3d 213,
218 (Tex. App.—Beaumont 2008, no pet.) (“Multiple causes of action do not arise dependent on whether
the physician was negligent before, during, or after the wrong cut.”), with Farishta v. Tenet Healthsystem Hosps. Dallas, Inc., 224 S.W.3d 448,
455 (Tex. App.—Fort Worth 2007, no pet.) (affirming denial of dismissal as to some
injuries but ordering dismissal as other injuries where appellant’s petition
alleged multiple injuries resulting from doctor’s failure to meet same standard
of care yet expert report addressed only some injuries).

In its motion for en banc reconsideration, Certified
EMS contends that our holding is contrary to the decisions of other courts of
appeals.  See River Oaks Endoscopy Ctrs., L.L.P. v. Serrano, No.
09-10-00201-CV, 2011 WL 303795, at *2 (Tex. App.—Beaumont Jan. 27, 2011, no
pet.) (mem. op.); Petty v. Churner,
310 S.W.3d 131, 138 (Tex. App.—Dallas 2010, no pet.); Beaumont Bone & Joint Inst., P.A. v. Slaughter, No.
09-09-00316-CV, 2010 WL 730152, at *4–5 (Tex. App.—Beaumont Mar. 4, 2010, pet.
denied) (mem. op.); Obstetrical &
Gynecological Assocs., P.A. v. McCoy, 283 S.W.3d 96, 104 (Tex. App.—Houston
[14th Dist.] 2009, pet. denied); Knapp
Med. Ctr. v. Molina, No. 13-09-00372-CV, 2009 WL 3861124, at *5 (Tex.
App.—Corpus Christi Nov. 19, 2009, no pet.) (mem. op.).  We agree with Certified EMS that our decision is inconsistent
with the decisions from the Beaumont court of appeals in Serrano[5]
and Slaugher,[6]
but we disagree with its characterization of any conflict in the holdings of
the other courts of appeals.  For example, in Petty, the Dallas court of appeals determined the report was
inadequate to any liability theory and required the dismissal of the entire
case, which is consistent with our present holding.[7]
 Similarly, in McCoy, the Fourteenth court of appeals determined the report was
adequate as to at least one liability theory within a cause of action and
affirmed the denial of the motion to dismiss, which is also consistent with our
present holding, although the basis for allowing certain liability theories to
move forward was a party’s failure to timely object to the adequacy of the
report.[8] 
Furthermore, the Corpus Christi court of appeals in Knapp did not reach the question whether the direct liability
theory could move forward if the report was adequate only as to vicarious
liability theory, although both theories were allowed to move forward in that
case because the defendant did challenge the direct liability theory.[9]  Although other intermediate courts of appeals
have addressed similar situations, we have not found any case that has
performed a statutory analysis of the meaning of claims and causes of
action in the context of a medical expert report, and we, therefore, are guided
in this case by the plain meaning and purpose of the statute.

          Our holding
is also supported by our earlier suggestion that an expert report need not set
forth each liability theory within a cause of action.  See
Clear Lake Rehab. Hosp. L.L.C. v. Karber,
No. 01-09-00883-CV, 2010 WL 987758, at *5 n.7 (Tex. App.—Houston [1st Dist.] 2010, no pet.).  In Karber,
this Court stated: 

We recognize that, in his report, Evans opines that Clear
Lake’s breach of the standard of care proximately caused not only Karber’s
fracture but also the subsequent infection and amputation.  However, because Karber has asserted a
healthcare liability claim based, at least in part, upon her fracture, and
because we have concluded that Evans is qualified to opine on the causal
relationship between Clear Lake’s breach and Karber’s injury of a fracture, we
conclude that the trial court acted within its discretion in determining that
Evans was qualified to offer causation opinions in support of Karber’s claim.

 

Id.  This Court, therefore, found that the adequacy of the report
as to the fracture was sufficient for the entire cause of action, which
included liability theories based on the subsequent infection and amputation, to move
forward.  Id.  However, in Karber, this Court did not directly
discuss whether a claim should be split or under what circumstances that should
occur, nor was that argument made by the parties in that appeal.  See id.

In its motion for en banc reconsideration, Certified
EMS suggests en banc reconsideration is required because our opinion conflicts
with a prior decision of this Court.  See Univ. of Tex. Med. Branch v. Railsback,
259 S.W.3d 860, 864 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  We disagree. 
Railsback concerned an
analysis of a hospital’s liability based on the conduct by three different
actors: Dr. Ivey, the hospital nursing staff, and Dr. Maxwell.  Id.
at 862, 685.  Railsback sued the hospital
on (1) a direct liability theory of negligence for (a) failing to monitor its
physicians and employees and (b) negligent supervision and failure to train its
physicians and employees in the proper technique and positioning of a
tourniquet and (2) a vicarious liability theory for the acts and omissions of
its employees and agents.  Id. at 862.  By focusing on the report’s discussion of the
particular conduct by the three different actors, Railsback’s analysis notes that the report mentions Dr. Maxwell
only once, finds the expert report inadequate concerning his conduct, and
orders the dismissal of the direct and vicarious liability theories premised on
his conduct.  Id. at 865–66.  In Railsback, this Court determined that
the expert report was:

·       
adequate against the hospital for vicarious liability for
acts and omissions premised on the conduct by Dr. Ivey and the hospital’s nursing
staff; and

 

·       
inadequate against the hospital for direct liability and
vicarious liability for acts and omissions premised on the conduct by Dr.
Maxwell.

Id. at 866, 870.  Railsback,
therefore, split the health care liability claim by allowing the vicarious
liability theories premised on the conduct by Dr. Ivey and the hospital’s
nursing staff to move forward but dismissing the vicarious and direct liability
theories premised on the conduct of Dr. Maxwell.  Id.  If we applied our present holding to the facts
in Railsback, we would determine that,
despite the expert report’s failures concerning some of the liability theories,
the entire cause of action concerning the placement of the tourniquet could move
forward against the hospital because at least one liability theory within the
cause of action was shown by the expert report. 
See id.  However, we note that the argument presently
before us does not appear to have been made by the parties in Railsback and the opinion does not
directly discuss the propriety of allowing a cause of action to proceed against
a defendant when not all liability theories are shown by the expert
report.  See id.  Therefore, the
implicit holding of Railsback relied
on by Certified EMS in its motion for en banc reconsideration does not
constitute binding precedent.  See Cooper
Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 170, 125 S. Ct. 577, 586
(2004) (“Questions which merely lurk in the record, neither brought to the
attention of the court nor ruled upon, are not to be considered as having been
so decided as to constitute precedents.”) (quoting Webster v. Fall, 266 U.S. 507, 511, 45 S. Ct. 148, 149 (1925)); Hatcher v. Range, 98 Tex. 85, 89, 81
S.W. 289, 291 (1904) (“We are equally bound by those precedents, unless there
be present in this [case] a sound reason why they should be disregarded which
was not considered in those cases.”); Herring-Hall-Marvin
Co. v. Kroeger, 23 Tex. Civ. App. 672, 674, 57 S.W. 980, 981 (Tex. Civ.
App. 1900, writ ref’d) (distinguishing conflicting holdings where question
under present consideration had not been raised or discussed).  En banc reconsideration is, therefore, not
required.

                    5.       Analysis
of Report Filed by Potts

          Here, the facts giving rise to Potts’s
right to institute and maintain an action include Hardin’s actions and the
actions of Certified EMS in employing, hiring, training, and supervising
Hardin.  This group of operative facts
give rise to at least two bases for suing Certified EMS—direct liability and
vicarious liability.  In other words,
although Potts has asserted two bases for a potential recovery from Certified
EMS, it is one “cause of action” and thus one “claim” under chapter 74.  Compare
Tex. Civ. Prac. & Rem. Code Ann.
§ 74.001(a)(13) (defining “health care liability claim”) with In
re Jorden, 249 S.W.3d at 421 (defining “cause of action”).  Focusing on Certified EMS and not on each
theory of liability asserted by Potts, an expert report implicating Hardin’s
conduct and Certified EMS status as Hardin’s employer—for the underlying cause
of action concerning Hardin’s improper touching of Potts—was served on
Certified EMS.  Thus, the requirements
of the statute were met.

          We conclude
that Potts’s expert report adequately addresses facts describing the improper
sexual conduct by the nurse, and the report, therefore, is adequate as to his
employer, Certified EMS, under the vicarious-liability legal theory of respondeat
superior.  Because the lawsuit by Potts
may proceed against Certified EMS under at least one liability theory for the
cause of action concerning the nurse’s improper sexual contact with Potts,
Potts may proceed with any and all liability theories for this cause of action,
regardless whether those other liability theories were shown in an adequate
expert report.  In contrast, if Potts had
not provided an adequate expert for any liability theory for this cause of
action, the entire cause of action would have been dismissed with prejudice,
regardless whether those theories had been pleaded.  We hold the trial court properly denied the
motion to dismiss.  

          We overrule
Certified EMS’s fifth issue.

Conclusion

          Because
we lack jurisdiction, we do not address Certified EMS’s appeal concerning its
first motion to dismiss.  We affirm the
trial court’s order denying Certified EMS’s second motion to dismiss.   

 

 

                                                                   Elsa
Alcala

                                                                   Justice

 

Panel consists of Justices Jennings, Alcala,
and Sharp.











[1]           We distinguish this situation from Rivenes v. Holden, 257 S.W.3d 332, 340–41 (Tex. App.—Houston [14th
Dist.] 2008, pet. denied) (holding appellate court had jurisdiction over appeal
despite motion for extension of time that was granted by trial court because no
expert report was filed as report tendered by claimant did not “implicate
appellant’s conduct” or “refer to appellant by name or position”).  We also distinguish Garcia v. Marichalar, 185 S.W.3d 70, 73 (Tex. App.—San Antonio
2005, no pet.) (holding appellate court had jurisdiction over appeal because
defendant was not mentioned at all or focus of expert reports that were filed).  Unlike these cases, Certified EMS was
implicated by the report and described as a temporary nursing agency.





[2]           This
Court is aware that the Texas Supreme Court has analyzed the adequacy of a
report with respect to a health liability claims by detailing the various
liability theories within it.  In re McAllen Medical Center, 275 S.W.3d
458, 464–65 (Tex. 2008).  In McAllen, the court, first, said that the
expert report was inadequate to show that the hospital was negligent in hiring,
retaining, and supervising the doctor because the purported expert was not
qualified to make the report.  Id. at 463.  Second, the court stated that the expert
report was inadequate to show vicarious liability because the report failed to
suggest the hospital controlled the details of the doctor’s medical tasks.  Id.
at 464.  Third, the court explained that
the fraud, fraudulent concealment, civil conspiracy, and misrepresentation
claims were clandestine credentialing claims that required an expert report,
which had not been provided by the claimant. 
Id.  Although it examined each of the theories
presented by the claimant, the court did so to explain why none of the theories
presented could support the cause of action against the hospital.  Id.   The court did not express any comment
concerning whether the expert report would have been adequate as to all the
theories within the cause of action if any of the theories had been found to be
supported by the report.  Id.





[3]           In its
motion for en banc reconsideration, Certified EMS asserts that we “incorrectly
opine[] that the courts of appeals are split as to whether an expert report
must address both vicarious and direct liability theories.”  This assertion misstates our opinion.  The split to which we actually refer concerns
multiple liability theories in general, not vicarious versus direct liability
theories in particular.





[4]           Unlike
Pokluda, the Fourteenth court of appeals
has also suggested that an expert report is required to separately address
direct and vicarious liability theories against a single defendant for the
report to be adequate as to those theories. 
See Obstetrical &
Gynecological Assocs. v. McCoy, 283 S.W.3d 96, 103 (Tex. App.—Houston [14th
Dist.] 2009, pet. denied) (“If OGA is correct that McCoy has asserted claims of
direct negligence against it, then McCoy was required to serve OGA with an
expert report specifically addressing its conduct rather than just the conduct
of Drs. Jacobs and Gunn for which OGA is vicariously liable.”).  The court, however, ultimately held that no
expert report was required in that case.





[5]           In Serrano, the plaintiff pleaded health
care liability claims against a doctor and a health care provider that employed
the doctor.  River Oaks Endoscopy Centers, L.L.P. v. Serrano, No.
09-10-00201-CV, 2011 WL 303795, at *1 (Tex. App.—Beaumont Jan. 27, 2011, no
pet.) (mem. op.).  The plaintiff alleged
the doctor was directly liable for negligence. 
Id. at *3.  The plaintiff alleged the provider was
directly liable for negligence and vicariously liable for the doctor’s
negligence.  Id. at *3.  The provider
filed a motion to dismiss “contend[ing] that [the plaintiff] did not submit an
expert report on her direct liability theories of recovery against” it.  Id.
at *1.  After the trial court denied the
provider’s motion to dismiss, the provider filed an interlocutory appeal.  Id.  The Beaumont court of appeals held that the
plaintiff was required to submit expert reports on both the direct and
vicarious liability theories, which it described as separate health care
liability claims.  Id. at *2.  The court then
determined that the expert report was inadequate as to the direct liability
theories asserted against the provider.  Id. at *2.  Noting that the provider had not challenged
the adequacy of the report as to the vicarious liability theories, the
appellate court reversed the trial court’s order only to the extent that it
denied dismissal of the direct liability theories.  Id. at
*3.  





[6]           In Slaughter—another case out of the
Beaumont court of appeals—the plaintiff pleaded health care liability claims
against a doctor and a health care provider. 
Beaumont Bone & Joint Inst.,
P.A. v. Slaughter, No. 09-09-00316-CV, 2010 WL 730152, at *1 (Tex.
App.—Beaumont Mar. 4, 2010, pet. denied) (mem. op.).  The plaintiff alleged the doctor was directly
liable for negligence.  Id. 
The plaintiff alleged the provider was directly liable for negligence
and vicariously liable for the negligence of the doctor, another physician, the
appointment schedulers, and the medical assistant.  Id.  After the trial court denied the provider’s
motion to dismiss, the provider filed an interlocutory appeal.  Id.  The Beaumont court of appeals determined that
the expert report was adequate as to the vicarious liability theories based on
the negligence of the doctor, the appointment schedulers, and the medical
assistant.  Id. at *4.  However, it
determined that the report was inadequate as to the vicarious liability theory
based on the other physician’s negligence. 
Id. at *3.  Finally, it determined that the report was
inadequate as to the direct liability theories asserted against the
provider.  Id. at *4.  Accordingly, the
appellate court reversed the trial court’s order denying the provider’s motion
to dismiss as to the vicarious liability theory based on the other physician’s
negligence and the direct liability theories. 
Id. at *5.  We agree with Certified EMS that the Beaumont
court of appeals’ holdings in Serrano
and Slaughter conflict with our
present holding.





[7]           In Petty, the plaintiffs pleaded health
care liability claims against a doctor and a health care provider.  Petty
v. Churner, 310 S.W.3d 131, 133 (Tex. App.—Dallas 2010, no pet.).  The plaintiffs alleged the doctor was
directly liable for negligence.  Id. 
The plaintiffs also alleged the doctor and the provider were vicariously
liable for a technician’s negligence.  Id. at 133–34.  Both the doctor and the provider filed motions
to dismiss.  Id. at 134.  The trial court
granted the doctor’s motion but denied the provider’s motion.  Id.  Both the plaintiffs and the provider
appealed.  Id.  The Dallas court of appeals
determined that the expert reports were inadequate as to the vicarious
liability theory asserted against the provider, and it reversed the trial
court’s denial of the provider’s motion to dismiss.  Id.
at 136–37.  For the same reasons, the
appellate court found the reports inadequate as to the vicarious liability
theory asserted the doctor.  Id. at 138.  Determining that the reports were also
inadequate as to the direct liability theory asserted against the doctor, the
appellate court affirmed the trial court’s grant of the doctor’s motion to
dismiss.  Id. at 138.  Although the Petty court separately analyzed the
adequacy of the expert reports as to both direct and vicarious liability
theories, the court may have done so to determine if the report is adequate as
to either theory.  See id.  Contrary to
Certified EMS’s assertion, the Dallas court of appeals’ holding in Petty is consistent with our present
holding as the expert reports were not found to be adequate as to at least one
liability theory within the cause of action asserted against a single
defendant.





[8]           In McCoy, the plaintiffs pleaded health
care liability claims against two doctors and a health care provider, which
employed the doctors.  Obstetrical & Gynecological Assocs.,
P.A. v. McCoy, 283 S.W.3d 96, 99 (Tex. App.—Houston [14th Dist.] 2009, pet.
denied).  The plaintiffs alleged the
doctors were directly liable for negligence. 
Id.  The plaintiffs alleged the provider was (1)
vicariously liable under the doctrine of respondeat superior for the doctors’
negligence; (2) liable under the Texas Professional Association Act based on
the doctors’ conduct; (3) liable for the doctor’s gross negligence; and (4)
liable based on a vice-principal theory and an allegation that the provider
authorized or ratified the doctors’ conduct. 
Id. at 99, 106–08.  After the trial court denied the provider’s
motion to dismiss, the provider filed an interlocutory appeal.  Id.
at 99.  On appeal, the provider
characterized allegations (2), (3), and (4) as being direct liability
theories.  Id. at 104, 106, 108. 
Although not disputing the provider’s characterization, the Fourteenth
court of appeals determined that each allegation based liability on the conduct
of the provider’s doctors as distinguished from the conduct of the provider as
an entity.  Id. at 110.  The court
explained that where a party’s liability is predicated upon another’s conduct,
no additional expert report is required if the party’s liability is based on a
legal principal, rather than a medical standard of care.  Id.
at 106.  Accordingly, because the
provider had failed to timely object to the expert reports concerning the
doctors’ conduct, the court held that the trial court was within its discretion
to not grant the provider’s motion to dismiss. 
Id. at 103, 110.  Contrary to Certified EMS’s assertion, the Fourteenth
court of appeals’ holding in McCoy is
consistent with our present holding:  the
expert reports were adequate as to at least one liability theory within the
cause of action, and the appellate court affirmed the denial of the motion to
dismiss.  Nevertheless, we note that the McCoy court’s reasoning is inconsistent
with our present holding in that it suggests direct and vicarious liability
theories asserted against the same defendant may each proceed only if the
expert reports are adequate as to each theory. 
See id. at 103.  





[9]           In Knapp, the plaintiff pleaded health care
liability claims against a nurse and a health care provider that employed the
nurse.  Knapp Med. Ctr. v. Molina, No. 13-09-00372-CV, 2009 WL 3861124, at
*1 (Tex. App.—Corpus Christi Nov. 19, 2009, no pet.) (mem. op.).    The plaintiff alleged the nurse was
directly liable for negligence.  Id. 
The plaintiff alleged the provider was directly liable for negligence
and vicariously liable for the nurse’s negligence.  Id.  The plaintiff’s expert report was adequate
only as to the claim against the nurse.  Id. at *5.  The provider filed a motion to dismiss the claim
against it, including both the direct and vicarious liability theories.  Id.
at *1, *5 n.4.  After the trial court
denied the provider’s motion to dismiss, the provider filed an interlocutory
appeal.  Id. at *1.  The Corpus
Christi court of appeals determined that the expert report was adequate as to
the claim asserted against the nurse.  Id. at *5.  Accordingly, it found the report adequate as
to the vicarious liability theory asserted against the health care
provider.  Id.  Noting that the provider
had not challenged the adequacy of the report specifically as to the direct
liability theory, the court overruled the provider’s challenge to the denial of
the dismissal.  Id.   Because the provider
had not challenged the adequacy of the report as to the direct liability
theory, the Kaupp court did not reach
the question at issue here.